**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------

ANTONIO BROADNAX,

                                        Petitioner,

            v.                                                        No. 11-CV-21
                                                                     (MAD/CFH)

JAMES CONWAY, Superintendent,
Attica Correctional Facility,
                                        Respondent.
-----------------------------------------------------------------

**APPEARANCES:**                          **OF COUNSEL:**

ANTONIO BROADNAX
Petitioner Pro Se
04-B-2597
Sing Sing Correctional Facility
354 Hunter Street
Ossining, New York 10562

HON. ERIC T. SCHNEIDERMAN              PAUL B. LYONS, ESQ.
Attorney General for the State         Assistant Attorney General
        of New York
120 Broadway
New York, New York 10271

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[1]

    Petitioner pro se Antonio Broadnax is currently an inmate in the custody of the New

York State Department of Corrections and Community Services ("DOCCS") at Sing Sing

Correctional Facility.  Dkt. No. 1 at 1.  On July 24, 2004, Petitioner was found guilty of

Murder in the Second Degree, and Criminal Possession of a Weapon in the Second and

_____

        [1] This matter was referred to the undersigned for report and recommendation
pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.4.

Third degrees after a jury trial in Onondaga County.  Broadnax was sentenced to an

indeterminate term of twenty-five years to life imprisonment for the murder charge, a

determinate term of fifteen years imprisonment and five years of post-release supervision

for the second degree weapons charge, and a determinate term of seven years

imprisonment and three years of post-release supervision for the third-degree weapons

charge, all sentences to run concurrently.  Dkt. No. 13-1 at 7.  Broadnax now seeks a writ

of habeas corpus pursuant to 28 U.S.C. § 2254 on the grounds that (1) he was denied

effective assistance of counsel, (2) his Miranda rights were violated, (3) the prosecution

committed a Brady violation, (4) he was convicted based on insufficient evidence, and (5)

there is newly discovered evidence.  Dkt. No. 1.  For the following reasons, it is ordered

that Broadnax's petition be denied.


## I.  Background

On the evening of September 29, 2003, Antonio Broadnax ("Petitioner") shot and

killed Steffon Gabriel in the City of Syracuse.  T. at 75-76.[2]  Gabriel was shot in the head.

T. 428-29.  Michael and Scarlett Broadnax were standing at the scene when police

arrived.  T. 64.  After questioning Michael and Scarlett Broadnax and the victim's girlfriend,

Petitioner became the main suspect in the murder.  T. 83-85.  Michael and Scarlett

Broadnax both told police separately that they saw Petitioner fleeing the scene of the

murder just after hearing the gunshot.  Dkt. No. 13-1 at 74-76.  They told police that

Petitioner looked frightened.  Id.  Police arrested Petitioner after discovering outstanding

---

[2]  Citations to "T." refer to the transcript filed at Dkt Nos. 13-25 and 13-26 at 1-270.

2

warrants for his arrest in New York City.  Dkt. No. 13-23 at 48, 54.  Based upon those warrants, he was arrested at the home of his uncle, Lloyd Broadnax.  Id. at 48-54.  Holly Rao, Lloyd Broadnax's girlfriend, was also present and told police that a gun was hidden in a storage room outside the apartment.  Dkt. No. 13-1 at 76.  Police later found a gun and magazine inside a cereal box in that storage room.  T. 183-90.  Police determined that the gun found in the storage room matched the cartridge casings found at the crime scene and the bullet in the victim.  Id. 189, 235-41.

Petitioner was then brought to the Criminal Investigation Divsion (C.I.D.), where he was questioned by police regarding the murder of Steffon Gabriel.  Dkt. No. 13-23 at 55-56.  Petitioner told police that Gabriel had come to Petitioner's apartment earlier in the evening and began banging on his bedroom door while he was in the bedroom with his girlfriend.  Id. at 89.  Gabriel walked in on Petitioner while he was having sex with his girlfriend and accused Petitioner of owing him money.  Id. at 89-90.  Petitioner then stated that he left the bedroom to confront Gabriel whom Petitioner claimed had a knife.  Id. at 90.  Gabriel's girlfriend and one of Petitioner's family members then removed Gabriel out of the apartment.  Id. at 90-91.  Petitioner then walked his girlfriend home and on his return to the apartment encountered Gabriel again at the phone booth on the corner of Salina and Laurel Streets.  Id. at 91.  They had a verbal exchange and according to Petitioner, Gabriel "took a swing" at him.  Id.  Petitioner told police that he then walked away.  Id.  Police asked Petitioner whether he killed Gabriel, at which point Petitioner stated that if he was arrested he was never leaving jail again, and requested a lawyer.  Id. at 92-93. Police also found blood on Petitioner's shoes that matched Steffon Gabriel's DNA.  T. 357-58.

3

Petitioner was later arrested, tried, and convicted of Murder in the Second Degree and Criminal Possession of a Weapon in the Second and Third Degree.  Dkt. No. 13-1 at 7.

### A.  Huntley Hearing

Prior to trial, a suppression hearing was held in April 2004 during which three detectives and Petitioner testified.  Dkt. 13-23 at 38-213.  Syracuse Police Sergeant Gerald Birardi testified that some time after 10:00 a.m. on September 30, 2003, Birardi and other detectives arrested Petitioner, based on unrelated outstanding warrants, at the home of Petitioner's uncle, Lloyd Broadnax, at 1120 Park Street in Syracuse.  Id. at 41-54. Petitioner was then transported to the Criminal Investigation Division ("C.I.D.") of the Syracuse police station and placed in an interview room.  Id. at 55-56.  According to Birardi, Petitioner did not ask for counsel and he was handcuffed when Birardi left the interview room.  Id. at 69, 71.

Syracuse Police Detectives Karl Schmidt and Ivan Jimenez testified that at approximately 11:35 a.m., they met Petitioner in a C.I.D. interview room.  Dkt. No. 13-23 at 79, 175.  Detective Schmidt testified that Petitioner did not appear intoxicated at the time of the interview and both detectives testified that he was cooperative.  Id. at 81-82, 178. Detective Schmidt testified that the detectives then read Petitioner his Miranda rights from a cover sheet.  Id. at 82.  Detective Jimenez read the rights to Petitioner and Petitioner initialed next to each right after it was explained.  Id. at 84-86.  Detectives then asked Petitioner if he was willing to discuss Gabriel's homicide with them and he consented.  Id. at 86.  Petitioner then signed the Miranda form.  Id.  Detective Schmidt also testified that

4

Petitioner did not request a lawyer and that no threats or promises were made to him. Id. at 87-88. Petitioner then described the events recounted above to Detectives.

Petitioner told Detectives that he had a verbal altercation with Gabriel earlier in the evening at his mother's apartment where he lived. Dkt. No. 13-23 at 89-90. He then walked his girlfriend home and upon his return again encountered Gabriel at the phone booth. Id. at 91. They had another verbal altercation and Gabriel "took a swing" at Petitioner. Id. Petitioner told Detectives that he then walked away. Id. When asked if he killed Gabriel, Petitioner responded that if he were arrested he was never leaving jail again. Id. at 92. At this point, Petitioner asked to speak with a lawyer and the interview ended. Id. at 92, 94.

Detective Jimenez largely confirmed the testimony of Detective Schmidt. Dkt. No. 13-23 at 171-81. Detective Jimenez did not recall Petitioner saying anything more when asked if he had murdered Gabriel. Id. at 180-81. Both Detectives testified that the interview lasted approximately twenty to thirty minutes. Id. at 92, 181.

Petitioner testified that he did not initial the Miranda form and he signed it without reading it. Dkt. No. 13-23 at 135. He also testified that the Detectives never actually read his rights to him. Id. at 136. Petitioner testified further that he repeatedly requested a lawyer but Detectives continued questioning him and kept him in the interview room for hours. Id. at 137-44. He denied saying anything to police about the murder of Gabriel. Id. at 137, 140-44. He also claimed that he was threatened with a harsh sentence if he did not confess and was punched in the stomach in an effort to get him to talk about the homicide. Id. at 137, 139-141, 143.

At the conclusion of the hearing, the court orally issued findings of fact and conclusions of law.  The court found that Petitioner's hearing testimony was "incredible," and that the court "len[t] no truth or v[e]racity to that testimony at all."  Dkt. No. 13-23 at 211.  Based upon the credible testimony of the police witnesses, the court found that Petitioner was properly advised of his Miranda warnings prior to questioning, and that Petitioner initialed and signed the Miranda waiver form, indicating that he understood his rights and was willing to talk to the detectives without an attorney.  Id. at 206-10.  The court further found that Petitioner was not intoxicated at the time of the interview, and that Petitioner's waiver of his rights and oral statements to the detectives were not induced through threats, promises, or physical abuse.  Id. at 208-10.  The court thus concluded that Petitioner's oral statements to the police during the interview were admissible, as they were knowing, intelligent, and voluntary beyond a reasonable doubt.  Id. at 209-11.

## B.  The Trial

On the day that the trial began, the prosecution turned over the grand jury testimony and police statement of Holly Rao, Lloyd Broadnax's girlfriend.  T. 2-4.  In those statements, Rao claimed that on the night of the murder, she overheard Petitioner tell Lloyd Broadnax that Gabriel had attacked him with a knife, and he feared for his life.  T. 4-6.  Defense counsel made a motion for a mistrial based upon a Brady violation.[3]  T. at 2.  The court denied the motion.  T. 10-11.  The court found that the statements were not Brady material because the Defense had access to that information through Lloyd

---

[3]  Under Brady v. Maryland, 373 U.S. 83 (1963), the Prosecution is required to make timely disclosures of all exculpatory evidence to the Defense.

Broadnax's statement, and through the defendant himself, both parties to the conversation.  T. at 9-11.  The court further found that the defense was not prejudiced by their belated disclosure because Holly Rao was not testifying that day, and they had time to prepare.  T. at 11.

The Prosecution's case rested primarily on circumstantial evidence and the testimony of the police officers involved.  During the trial, Detective Hamberger first testified that he interviewed both Michael and Scarlett Broadnax.  T. 76-77.  The Detective testified that after talking to those witnesses several times and for several hours, Petitioner was the main suspect in the murder of Steffon Gabriel.  T. 84-85.  Hamberger never testified as to any actual statements made by either witness, only that he interviewed them.  T. at 74-86. Detective Jimenez again testified, consistent with the testimony which he had previously provided during the Huntley hearing.  T. 370-88.  Namely, he discussed how Petitioner agreed to speak to the police without counsel present and then told Jimenez that Gabriel showed up at the apartment, walked in on himself and his girlfriend having sex, brandished a knife, and was promptly removed from the apartment.  T. 380-81.  Petitioner then walked his girlfriend home and saw Gabriel when he was returning to the apartment. T. 381-82.  Gabriel again began arguing with Petitioner, "took a swing at him, and then Petitioner left to go home.  T. 382.

The medical examiner testified that the cause of death was a single gunshot wound to the head, and based upon the autopsy and her medical opinion, the manner of death was homicide, as stated on Gabriel's death certificate.  T. 433-34.  Moreover, police recovered a shell casing from the sidewalk by the victim and the bullet from the victim, but did not recover a knife.  T. 114-25, 434-37.  A witness also testified that he had seen a man at the

phone booth where Gabriel's body was found, and another man yelling at him only moments before hearing a gunshot.  T. 400-02.

When police executed a search warrant of Lloyd Broadnax's home, where Petitioner was staying and arrested, a loaded nine millimeter, semi-automatic handgun was recovered.  T. 182-92, 199-201, 213-18.  Ballistics determined that the shell casing found at the scene of the crime as well as the bullet recovered from the victim were both discharged from that gun.  T. 226-36, 238-41, 262-81.  An expert in blood spatter testified that shooting someone from only a few feet away would result in small droplets of blood that projected downward, the same as the blood drops found on Petitioner's boots.  T. 129-31.  DNA evidence later confirmed that this blood was from the victim.  T. 321-31, 357-58.

Thomas Niland, the vice-president of the company where Lloyd Broadnax worked, also testified.  T. 206-08.  The prosecutor had asked Niland to check the time records for the evening of the murder.  T. 208-09.  Niland testified that company records showed that Lloyd Broadnax had been working from six p.m. to ten p.m. that night.  T. 209.

During the closing arguments, the Prosecution stated that Petitioner had admitted killing Gabriel when he told police that he was never getting out of jail if arrested.  T. 476. The Prosecution also stated in summation that intent had been proven through the fact that Gabriel was shot in the head.  T. 478.  The Prosecution further stated that it was uncontradicted that Petitioner had his Miranda rights read to him.  T. 482.  The Defense counsel countered the Prosecution by arguing in summation that the Prosecution was trying to imply guilt through Petitioner's assertion of his right to counsel.  T. 469-70.  The Defense also argued that the Detectives who recalled Petitioner stating that he was never

8

getting out of jail, had not taken any notes during the interview and could not remember other details of their encounter with Petitioner.  Id.  The defendant was convicted on all charges.  T. 623-26.

    After the trial concluded, Lloyd Broadnax made a signed affidavit in which he stated that he found the murder weapon the night before the shooting and kept it in his apartment.  Dkt. No. 13-26 at 287-88.  The defense then made a motion to set aside the verdict based upon this newly discovered evidence.  Id. at 288.  The court found the affidavit to be "patently unbelievable," given the affidavit of Holly Rao and the blood evidence found on Petitioner.  Id. at 290-93.  The court also found that the evidence could have been discovered by simply talking to Lloyd Broadnax.  Id. at 293.  Finally, the court concluded that the affidavit would not have changed the outcome of the trial and the motion was denied.  Id. at 295-96.

### C.  Appeals

    Petitioner was convicted of Murder in the Second Degree, Criminal Possession of a Weapon in the Second Degree, and Criminal Possession of a Weapon in the Second and Third Degrees.  Dkt. No. 13-1 at 8.  The Petitioner filed a direct appeal in the Appellate Division, Fourth Department, asserting that  (1) the People violated Brady by failing to timely produce Holly Rao's police statement and grand jury testimony; (2) the conviction for second-degree murder was against the weight of the evidence and based on insufficient evidence; and (3) newly discovered evidence in the form of an affidavit from Lloyd Broadnax had "cast significant doubt upon the verdict."  Dkt. No. 13-4.

    On June 13, 2008, the Appellate Division unanimously affirmed the judgment of

conviction.  People v. Broadnax, 52 A.D.3d 1306 (N.Y. App. Div. 2008).  The court first held that the statement and testimony of Holly Rao did not constitute Brady material because the information therein was available to the defendant through Lloyd Broadnax and Petitioner and would not have revealed any essential information that the defense did not already know.  Id. at 1307.  The court also held that the claim of insufficient evidence, with respect to the element of intent, was not preserved for review.  Id.  However, the court found that in any event the claim was without merit because intent may be inferred from the defendant's conduct and the circumstances surrounding the crime; thus, the Prosecution had presented sufficient evidence with regard to intent.  Id.  The court stated that the defendant admitted being at the location of the murder, a witness saw the victim engaged in a heated argument with another man before hearing a gunshot, the victim died from a gunshot wound to the head, the bullet was fired from the gun recovered from Lloyd Broadnax's apartment where the defendant was found, the victim's blood was found on the defendant, and the blood spatter established that the defendant was standing only several feet from the victim at the time of the murder.  Id.

    The court also rejected the claim that the county court had erred in denying Petitioner's motion pursuant to CPL § 330.30(3) to set aside the verdict on the ground of newly discovered evidence.  Broadnax, 52 A.D.3d at 1307-08.  The court found that the county court properly determined that the affidavit prepared by Lloyd Broadnax was not believable.  Id. at 1308.  The court also held that in any event, the evidence could have been produced at trial with the exercise of due diligence and it would not have produced a different result at trial.  Id.  The Petitioner then sought leave to appeal to the Court of Appeals, raising the same claims raised in the Appellate Division.  Dkt. No. 13-7 at 2-3.

The Court of Appeals denied leave on October 30, 2008.  Dkt. No. 13-9.

Petitioner filed a coram nobis petition in the Appellate Division on May 7, 2009, asserting that his appellate counsel on direct appeal erred by not asserting a claim that the admission of his statements to police violated his <u>Miranda</u> rights, not asserting that Petitioner's trial counsel erred in not objecting to Detective Hamberger's testimony that Petitioner became a suspect after speaking to his mother, grossly delaying the appeal, and failing to file a motion for DNA testing under CPL § 440.30(1-A).  Dkt. No. 13-10 at 2-3, 10-14.  The Appellate Division summarily denied the motion.  <u>People v. Broadnax</u>, 66 A.D.3d 1499 (N.Y. App. Div. 2009).  Petitioner sought leave to appeal to the Court of Appeals, which the Court of Appeals denied.  <u>People v. Broadnax</u>, 14 N.Y.3d 770 (N.Y. 2010).

Finally, Petitioner filed a CPL § 440.10 motion on September 19, 2009, in Onondaga County Court to vacate his judgment of conviction.  Dkt. No. 13-16 at 2.  He claimed that: (1) his trial counsel erred by failing to object to: (a) police testimony that Petitioner became a suspect after his mother was interrogated; (b) the prosecution's characterization of Petitioner's statements to the police as a confession; (c) the medical examiner's testimony that the cause of death was homicide; and (d) the prosecutor's summation remark, implicitly commenting upon Petitioner's failure to testify; and (2) the admission of Petitioner's oral statements to the police violated his <u>Miranda</u> rights.  <u>Id.</u> at 6-13.

On January 29, 2010, the court denied the motion without a hearing.  Dkt. No. 13-19 at 2-7.  The court determined that the claims were procedurally barred as they could have been raised on direct appeal and that sufficient facts appeared on the record to permit appellate review of such claims in accordance with CPL § 440.10(2)(c).  <u>Id.</u> at 4-5.

11

The court found that in any event the claims were "legally and factually insufficient" to support a finding of ineffective assistance of counsel.  Id. at 5.  The court found that "the defense attorney vigorously pursued appropriate motions and objections and during trial which exhibited a thorough grasp of the factual issues and knowledge of the applicable law."  Id. at 6.  The court also held that the failure of an attorney to object on meritless grounds does not render his assistance ineffective.  Id.  The petition was denied in all respects.  Id.  Petitioner appealed to the Appellate Division for leave to appeal and on December 28, 2010, the Appellate Division summarily denied leave.  Dkt. No. 13-21 at 2; Dkt. No. 13-22 at 2.

## II. Discussion

### A. Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a federal court may grant habeas review only if state court proceedings "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or were "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1)-(2) (1996).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."  Williams v. Taylor, 529 U.S. 362, 412-

13 (2000).  Under the "unreasonable application" clause, a federal court may review the habeas petititon if the state court's application of Supreme Court precedent was "objectively unreasonable."  Id. at 409.

## B. Exhaustion

The Petitioner claims that trial counsel rendered ineffective assistance of counsel by failing to object to Thomas Niland's testimony as hearsay.  The State argues that Petitioner did not exhaust this claim because it was not raised in his § 440.10 motion or on direct appeal.

"Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court.  In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."  O'Sullivan v. Boerckel , 526 U.S. 838, 842 (1999).  In an ineffective assistance claim, the "state courts should have been given the opportunity to consider all the circumstances and the cumulative effect of all the claims as a whole." Rodriguez v. Hoke, 928 F.2d 534, 538 (2d Cir. 1991) (quoting Grady v. LeFevre, 846 F.2d 862, 865 (2d Cir.1988).  When the claim can turn on the cumulative effect of the allegations, all of the allegations should be reviewed together.

Here, the Petitioner alleges ineffective assistance of counsel based on five instances in which trial counsel did not raise an objection.  In Petitioner's § 440 motion, he raised such claims with respect to four of the instances of alleged ineffective assistance. However, Petitioner first asserts the fifth instance of alleged ineffective assistance, specifically counsel's failure to object to Niland's hearsay testimony, in the present

13

petition.  Petitioner should have also raised this instance in his prior motion in order to show the cumulative effect of all the claims of ineffective assistance as a whole.  The Petitioner can no longer raise this fifth claim on direct appeal because he has already filed the one direct appeal and leave application to the Court of Appeals to which he is entitled. Also, he cannot raise the hearsay testimony claim in a CPL § 440.10 motion because the trial record submitted on appeal contained sufficient facts to have enabled the Appellate Division to have reviewed them.  Grey v. Hoke, 933 F.2d 117, 120 (1991) (citing N.Y. CRIM. PROC. LAW § 440.10(2)(c) (barring review if a claim could have been raised on direct review)).  While failure to exhaust claims generally prevent a habeas court from considering a claim on the merits, an unexhausted claim is deemed exhausted when no real avenue remains open by which it could be exhausted.  Aparicio v. Artuz, 269 F.3d 78, 90 (2d Cir. 2001).

Thus, this claim is deemed exhausted because Broadnax is procedurally barred from bringing it in state court.  Furthermore, when a state court would find the claim procedurally barred, federal habeas courts must also deem the claim procedurally defaulted.  Aparicio, 269 F.3d at 91 (citing Coleman v. Thompson, 501 U.S. 722, 735 n. 1 (1991)).  Therefore, Petitioner's claim as to the testimony of Thomas Niland is procedurally defaulted.[4]

## C.  Adequate and Independent State Law Grounds

---

[4]  Nonetheless, an application for a writ of habeas corpus may be denied on the merits notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the state.  28 U.S.C. § 2254(b)(2).  Therefore this claim will still be addressed on the merits.

Petitioner's four, previously discussed claims that he received ineffective assistance of counsel, that his conviction was based on insufficient evidence, and that his Sixth Amendment rights were violated are procedurally barred on adequate and independent state law grounds.  Federal habeas review of a state-court conviction is prohibited if a state court rested its judgment on a state law ground that is "independent of the federal question and adequate to support the judgment."  Coleman v. Thompson, 501 U.S. 722, 729 (1991) (citations omitted) (noting that federal court resolution of the federal issue would merely be advisory where the state judgment is supported by independent and adequate state grounds); see also Harris v. Reed, 489 U.S. 255, 261-62 (1989); Cotto v. Herbert, 331 F.3d 217, 238 (2d Cir. 2003); Garcia v. Lewis, 188 F.3d 71, 76 (2d Cir. 1999); Levine v. Comm'r of Corr. Servs., 44 F.3d 121, 126 (2d Cir. 1995).  "This rule applies whether the state law ground is substantive or procedural."  Coleman, 501 U.S. at 729 (citation omitted).  The independent and adequate state ground doctrine is jurisdictional, thus, if the state court "explicitly invokes a state procedural bar rule as a separate basis for decision[,]" the federal court is precluded from considering the merits of the federal claim in a habeas petition.  Harris, 489 U.S. at 264 n.10.

In his direct appeal, Petitioner failed to allege any instances of ineffective assistance.  Instead, he did so in his subsequent motion to vacate.  The county court denied the Petitioner's motion to vacate based on the four ineffective assistance of counsel claims entirely upon procedural grounds pursuant to CPL § 440.10(2)(c).[5]  Dkt. No. 13-19 at 5.

---

[5] CPL § 440.10(2)(c) provides that "the court must deny a motion to vacate judgment when . . . [a]lthough sufficient facts appear on the record of the proceedings . . . no such appellate review . . . occurred owing to the defendant's . . . unjustifiable failure to raise such a ground or issues upon an appeal . . . ."

The court held that Petitioner's claims were procedurally barred as they could have been raised on direct appeal, but were not, and sufficient facts appeared in the record to permit appellate review of such claims.  Id. at 4-5.  Furthermore, the court determined that Petitioner's claims of ineffective assistance of counsel were meritless.  Id. at 6.

The Petitioner also claims that the admission of his oral statements to detectives violated his Sixth Amendment Right to counsel because these statements were made without an attorney present despite his request for one.  A pretrial Huntley Hearing was held and the judge determined that Petitioner was advised of his Miranda rights and his statements were made voluntarily.  The Petitioner also claims that his conviction was based on insufficient evidence with regard to the element of intent.[6]

Similarly, the county court also denied these claims in Petitioner's motion pursuant to § 440.10(2)(c) because they were was procedurally barred since they could have been raised on his direct appeal and sufficient facts appeared on the record to permit appellate review of such claims.  Dkt. No. 13-19 at 3-5.  The court also held the claims to be factually and legally insufficient.  Id. at 6.

A procedural default from a decision based on an independent and adequate state law ground will bar habeas review of a federal claim when "the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar."  Tankleff v. Senkowski, 135 F.3d 235, 247 (2d Cir. 1998) (quoting Coleman v. Thompson, 501 U.S. 722, 735 (1991)).  This procedural bar is adequate, for purposes of habeas review, as it is based on a rule that is "firmly established and regularly

_____

[6]While Petitioner raised this claim on direct appeal, the court held that it had not been properly preserved and thus was unreviewable.

16

followed" by the state in question.  Garcia v. Lewis, 188 F.3d at 77 (quoting Ford v. Georgia, 498 U.S. 411, 423-24 (1991)). The Second Circuit has held that denial of a claim under C.P.L. § 440.10(2)(c) constitutes a firmly established and regularly followed categorization as a dismissal based upon adequate and independent state grounds.  See Sweet v. Bennett, 353 F.3d 135, 140-41 (2d Cir. 2003). Petitioner's state court claims were first dismissed, prior to any discussion of the merits, pursuant to CPL § 440.10(2)(c). Because this state law ground which was relied upon when deciding these claims has already been recognized as both independent of the federal question and adequate to support the decision of the state court, Petitioner's claims are procedurally barred and thus procedurally defaulted in this court.

When a claim in a federal habeas petition is procedurally defaulted, it cannot be heard by the federal reviewing court "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750; Ramirez v. Att'y Gen. of State of New York, 280 F.3d 87, 94 (2d Cir. 2001); Fama v. Comm'r of Corr. Servs., 235 F.3d 804, 809 (2d Cir. 2000) (citing Coleman, 501 U.S. at 749-50). To establish legal cause for his procedural default, a Petitioner must show that some objective external factor impeded his or her ability to comply with New York's procedural rules.  Murray v. Carrier, 477 U.S. 478, 488 (1986); Restrepo v. Kelly, 178 F.3d 634, 638 (2d Cir. 1999).  Examples of external factors include interference by officials, ineffective assistance of counsel, or that "the factual or legal basis for a claim was not reasonably available" at trial nor on direct appeal.  Murray v. Carrier, 477 U.S. at 488.

Petitioner has not offered any cause for or prejudice resulting from his procedural

default.  Therefore, these claims cannot be heard by this court.  For these reasons, it is recommended these claims be denied.[7]

## D. Ineffective Assistance of Counsel[8]

The Petitioner's claim that he was denied the effective assistance of counsel is both legally and factually insufficient.  He contends that his trial counsel provided ineffective assistance of counsel by failing to make several objections.  Pet. (Dkt. No. 1) at 5.  In order to prove ineffective assistance of counsel, the Petitioner must show that counsel was not functioning as guaranteed by the Sixth Amendment.

To establish ineffective assistance of counsel, a Petitioner must prove that counsel's performance was (1) deficient and (2) caused actual prejudice to Petitioner's defense.  United States v. DeJesus, 219 F.3d 117, 121 (2d Cir. 2000).  The first inquiry requires that a defendant show counsel's performance "fell below an objective standard of reasonableness."  Murden v. Artuz, 497 F.3d 178, 198 (2d Cir. 2007) (quoting Strickland v. Washington, 466 U.S. 668, 688 (1984)).  There is a strong presumption that counsel "made all significant decisions in the exercise of reasonable professional judgment."

---

[7] See supra n.4.

[8] Petitioner did not allege that his appellate counsel was ineffective in the present motion.  Even if he had, for the same reasons discussed infra, such a motion would fail. Appellate counsel filed a thirty-eight page brief advancing relevant though ultimately meritless arguments which were the product of sound legal strategy.  Advancing different or additional arguments which were similarly meritless were not required of counsel for the representation to remain constitutionally adequate.  Aparicio v. Artuz, 269 F.3d 78, 99 (2d Cir. 2001) ("The failure to include a meritless argument does not fall outside the wide range of professionally competent assistance to which Petitioner was entitled.") (internal quotation marks and citations omitted).

Strickland, 466 U.S. at 690.  The second inquiry requires the reviewing court to determine whether there is a reasonable probability that, but for counsel's deficient  performance, the outcome would have been different.  Id. at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Id.

To determine whether counsel's performance was effective, the court examines "counsel's overall performance" as reflected in the record.  See Kimmelman v. Morrison, 477 U.S. 365, 386 (1986); see also Jeremiah v. Artuz, 181 F. Supp. 2d 194, 203-04 (E.D.N.Y. 2002) (finding counsel's assistance effective where he casts doubt on the prosecution's case through competent cross-examination and closing argument). Additionally, where counsel decided to focus on some issues rather than others, there is no cognizable habeas corpus claim for ineffective assistance of counsel because the court presumes counsel's choice was one based on tactical reasons.  Yarborough v. Gentry, 540 U.S. 1, 8 (2003).  Furthermore, counsel cannot be found to be ineffective for failing to assert a meritless objection.  See, e.g., United States v. Arena, 180 F.3d 380, 396 (2d Cir. 1999) ("Failure to make a meritless argument does not amount to ineffective assistance."), cert. denied, 531 U.S. 811 (2000); United States v. Kirsh, 54 F.3d 1062, 1071 (2d Cir.) ("the failure to make a meritless argument does not rise to the level of ineffective assistance"), cert. denied, 516 U.S. 927 (1995).

It is clear that, in the aggregate, Petitioner's counsel performed effectively.  Counsel proffered a compelling opening and closing argument, participated in the examination of witnesses, offered objections, participated in motion practice, moved for dismissal multiple times on various bases, moved to suppress evidence, and sought modifications to the jury

charge.  Counsel also presented a defense, namely that Petitioner was not the shooter,

and attempted to advance that theory by discrediting the Prosecution's direct case.  While

the specific, enumerated violations are discussed, and denied, infra, it is also important to

note that counsel's performance, on the whole, was consistent with effective

representation.  This was noted by the state court and, since there was no unreasonable

application of the law, those conclusions are afforded deference.


### I. Failure to Object to Detective Hamberger's Testimony

        Broadnax first claims that his trial counsel should have objected to testimony by

Detective Hamberger that, after a six-hour interrogation of Petitioner's mother, Scarlett

Broadnax, Petitioner became a suspect as hearsay in violation of  People v. Trowbridge,

305 N.Y. 471 (1953).  In Trowbridge, the Court of Appeals held that a witness who heard

an eyewitness make an identification of a defendant cannot testify as to what he or she

heard because that would result in improper bolstering of the eyewitness identification.  Id.

at 474, 478.  However, it is well-established that claims based upon alleged violations of

the Trowbridge bolstering rule are not cognizable on habeas review. See Carr v. Fischer,

283 F. Supp. 2d 816, 836-37 (E.D.N.Y. 2003) ("Even if the challenged testimony could be

considered 'bolstering' testimony that the trial court should have precluded, such an error

does not constitute a violation of the Federal Constitution.").

    Moreover, even if it were a basis for review, there was no violation for which to object

because Detective Hamberger never testified as to any identification of Petitioner by

Scarlett Broadnax, the Trowbridge rule was not violated.  Zimmerman v. Burge, 492 F.

Supp. 2d 170, 195 (E.D.N.Y. 2007) (holding that after speaking with a witness who

20

provided him with information to identify a suspect who was then arrested, no <u>Trowbridge</u>

error occurred because "[t]he detective never testified as to any identification of Petitioner

by [the witness] . . . ."). Therefore, because federal case law permits such testimony, the

Appellate Division's denial of this claim was not contrary to federal law. Furthermore,

because making any objections based on <u>Trowbridge</u> would be meritless, Broadnax's

counsel was not ineffective for choosing not to engage in them. For these reasons, this

claim should be denied.

## II. Failure to Object to Prosecution Summation

Broadnax next claims that trial counsel should have objected to the prosecution's

statement during summation that Broadnax admitted killing Steffon Gabriel when he

stated to police that he was never getting out of jail. The Petitioner claims that the

prosecution was improperly characterizing his statement as a confession.

"The government has broad latitude in the inferences it may reasonably suggest to the

jury during summation." <u>United States v. Casamento</u>, 887 F.2d 1141, 1189 (2d Cir. 1989).

Moreover, such "arguments . . . may be vigorous and robust . . . ." <u>Campbell v. Greene</u>,

440 F. Supp. 2d 125, 155 (N.D.N.Y. 2006) (citations omitted). Accordingly, "[r]emarks of

the prosecutor in summation do not amount to a denial of due process unless they

constitute egregious misconduct." <u>United States v. Elias</u>, 285 F.3d 183, 190 (2d Cir. 2002)

(internal quotation marks and citations omitted). In addition, strategic choices made after

investigation of the relevant law and facts are normally not subject to challenge and the

reviewing court must be "highly deferential" to counsel's performance. <u>Strickland</u>, 466

U.S. at 689. Furthermore, counsel cannot be found to be ineffective for failing to assert a

21

meritless objection. <u>See, e.g.,</u> <u>United States v. Arena</u>, 180 F.3d at 396.

Here, the Prosecutor in his summation never actually referred to the statement as a confession. Dkt. No. 13-26 at 114. He asked the jury what Broadnax could have meant when he stated that he was going to jail for the rest of his life and concluded that he was admitting to the murder. <u>Id.</u> The Prosecutor then again referred to the "admission" in discussing the evidence that had been presented. <u>Id.</u> These statements were consistent with the State's duty to robustly present its case to the jury. Thus, objecting to them would not be fruitful.

Moreover, the defense attacked this statement in their summation by calling into question the credibility of the detective who testified to it and also arguing that the Prosecution wanted the jury to infer guilt from Broadnax's assertion of his constitutional right to request a lawyer. The defense clearly made a strategic decision to deny the statement ever being made. Also, the statements of the Prosecutor during his summation constituted an inference based upon the statement made by the Petitioner to police officers. The failure to object to those statements did not render defense counsel's assistance ineffective.

Furthermore, the Petitioner has not made any showing as to how he was prejudiced by this statement. The jury knew what the statement made by Broadnax was and could draw their own conclusions from that statement. The trial court diminished any possible prejudice by charging the jury that the trial attorneys' comments did not constitute evidence and that it was for the jury to determine what inferences may be drawn. Dkt. No. 13-26 at 136. Therefore, the Appellate Division's decision to deny this claim was not contrary to or an unreasonable application of Supreme Court precedent. For these

22

reasons, this claim should be denied.

### III. Failure to Object to the Medical Examiner's Testimony

Petitioner claims that trial counsel should have objected to testimony by the medical examiner that, in her opinion, the victim's cause of death was homicide.  It is clear that the admission of the medical examiner's opinion regarding the cause of death was an error. Under New York law, "while the autopsy findings are admissible to establish the primary facts stated therein, opinions as to the cause of death contained in such report are not admissible." People v. Violante, 144 A.D.2d 995, 996, 534 N.Y.S.2d 281, 283 (N.Y. App. Div. 1988); see also People v. Hampton, 38 A.D.2d 772, 773, 327 N.Y.S.2d 961, 962 (N.Y. App. Div. 1972) ("An autopsy report is . . . a public record and, therefore, admissible. Our courts, however, have not extended the rule to include opinions as to the cause of death contained in such reports.").  Petitioner's claims indicate both a potential argument for ineffective assistance of counsel and due process; however, both would be unsuccessful.

The Petitioner's defense strategy at trial was that he was not the shooter.  He never claimed that it was not a homicide or that a gunshot wound was not the cause of death. The trial counsel here may have simply chosen not to object because it was clear from the evidence that the victim died from a gunshot wound and that disputing the cause of death was not part of their trial strategy.  Under Strickland, courts must be highly deferential to the strategic decision of counsel when analyzing claims of ineffective assistance of counsel.  Strickland, 466 U.S. at 688.  Here, because a strategic choice was made, the Appellate Division's decision to deny this claim was not contrary to or an unreasonable application of Supreme Court precedent.

23

"For a habeas petitioner to prevail on a claim that an evidentiary error amounted to a deprivation of due process, he must show that the error was so pervasive as to have denied him a fundamentally fair trial." Singletary v. Fischer, 227 F.R.D. 209, 223 (E.D.N.Y. 2003) (citations omitted).  The standard is "whether the erroneously admitted evidence, viewed objectively in light of the entire record before the jury, was sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on record without it.  In short it must have been crucial, critical, highly significant." Collins v. Scully, 755 F.2d 16, 19 (2d Cir. 1985) (internal quotation marks and citations omitted).

Here, given the rest of the evidence presented during the trial, this statement was not the single piece of evidence which would have left the jury with a reasonable doubt.  The Petitioner had a verbal altercation with the victim earlier that evening, was seen fighting with the victim at the scene of the crime just before gunshots were heard, the victim was shot in the head, the gun was recovered from where Petitioner was staying, and the Petitioner had drops of the victim's blood on his shoes.  Accordingly, there was a multitude of other evidence presented to the jury which pointed to his culpability and this erroneous statement did not deny Petitioner of a fair trial.  For these reasons, it is recommended this claim be denied.


### IV.  Failure to Object to Testimony of Thomas Niland

The Petitioner claims that trial counsel should have objected to Thomas Niland's testimony about timesheets indicating that Lloyd Broadnax was at work at the time of the murder, as hearsay.  Regardless of whether this was hearsay, the decision not to object was clearly one of strategy.  First, trial counsel discredited Niland's testimony during cross

24

examination by pointing out that he did not actually see Lloyd Broadnax that night at work. Counsel also showed during cross examination that Lloyd Broadnax's place of employment was only a few blocks from the crime scene and implied that he could have left and returned that night.

Furthermore, as pointed out in Petitioner's letter from his legal aid lawyer, counsel did not want to ask too many questions about Lloyd Broadnax because the district attorney might have subpoenaed him and had him testify if she had.  Dkt. No. 13-10 at 19.  He could have testified to what Petitioner had told him which would have severely hurt his defense strategy of denying any involvement in the murder.  Because the decision not to object was once again a strategic choice by Defense counsel, the choice will be given deference and cannot be found to amount to ineffectiveness.  Strickland, 466 U.S. at 688. Therefore, the Appellate Division's decision to deny this claim was not contrary to or an unreasonable application of Supreme Court precedent.  For these reasons, this claim should be denied.


## V.  Failure to Object to Prosecutor Statement that
## Certain Evidence was Uncontradicted

Petitioner also claims that his trial counsel should have objected to the Prosecutor's statement that it was uncontradicted that detectives went over Petitioner's rights with him. Petitioner alleges that this remark implicitly referred to his failure to testify, in violation of his Fifth Amendment right.  To the contrary, a prosecutor is allowed to make reference to evidence being uncontradicted without violating the defendant's Fifth Amendment right.  A prosecutor has the right to show the strength of his case by pointing out that nothing in the

record puts the state's evidence in doubt.  United States v. Rodriguez, 556 F.2d 638, 641-42 (2d Cir. 1977) ("The Fifth Amendment and the statutes and cases which apply its teaching do not preclude a prosecutor from telling a jury that certain factual evidence, even if defendants have not conceded its correctness, is 'uncontradicted.'"); United States ex rel. Harden v. Follette, 333 F. Supp. 371, 381 (S.D.N.Y. 1970), aff'g 450 F.2d 879 (2d Cir.), cert. denied 404 U.S. 966 (1971) ("Such an indirect reference to petitioner's failure to take the stand, if it is such a reference at all, is considered proper prosecutorial advocacy in this Circuit.").  The failure to make meritless objections does not constitute ineffective assistance of counsel.  United States v. Arena, 180 F.3d 380, 396 (2d Cir.1999). Furthermore, the court diminished any possible prejudice by charging the jury that "the fact that the defendant . . . did not testify, is not a factor from which any inference unfavorable to the defendant may be drawn." Dkt. No. 13-26 at 140.

Because the Prosecutor's conduct was not in violation of any Supreme Court precedent, the Appellate Division's decision to deny this claim was not contrary to Supreme Court precedent.  Moreover, because the Prosecutor was not engaged in any improper conduct, any objections made by Petitioner's counsel would have been meritless.  For these reasons, it is recommended that this claim be denied.

### E.  Sixth Amendment Violation

Petitioner's claim that his Sixth Amendment right to counsel was violated when his statements to police, without counsel present, were admitted during the trial is without merit.

The right to counsel recognized in Miranda is sufficiently

26

> important to suspects in criminal investigations . . . that it
> "requir[es] the special protection of the knowing and intelligent
> waiver standard."  If the suspect effectively waives his right to
> counsel after receiving the Miranda warnings, law enforcement
> officers are free to question him.  But if a suspect requests
> counsel at any time during the interview, he is not subject to
> further questioning until a lawyer has been made available or
> the suspect himself reinitiates conversation.

Davis v. United States, 512 U.S. 452, 458 (1994) (citations omitted); see also United States v. Plugh, 648 F.3d 118, 125 (2d Cir. 2011) (explaining that defendants can then choose to either "unambiguously invoke those rights and thereby cut off further questioning or . . . knowingly and voluntarily waive those rights and cooperate fully.").  The evaluation of whether a statement to the police was voluntary requires an independent federal determination based on the totality of the circumstances surrounding the confession.  Nelson v. Walker, 121 F.3d 828, 833 (2d Cir. 1997), cert. denied, 488 U.S. 945 (1988) (quoting Arizona v. Fulminante, 499 U.S. 279, 286 (1991)).  Waiver must be both voluntary and "with full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it."  Moran v. Burbine, 475 U.S. 412, 421 (1986).  When determining the voluntariness of a confession, factors to be considered include characteristics of the accused such as the accused's experience and education, the conditions of the interrogation, and the conduct of law enforcement officials, notably, whether there was physical abuse, the period of restraint in handcuffs, and use of psychologically coercive tactics.  Nelson, 121 F.3d at 833 (citing Green, 850 F.2d at 901-02).

Furthermore, whether Petitioner effectively waived his Miranda rights in speaking to the detectives is a question of fact, thus, determinations of the state court are entitled to a

presumption of correctness.  Thompson v. Keohane, 516 U.S. 99, 111-12 (1995); Tankleff v. Senkowski, 135 F.3d 235, 243 (2d Cir. 1998) (finding that questions surrounding the circumstances of the interrogation are "purely factual, and the state court's answer to it is afforded a presumption of correctness under § 2254(d)."); Nelson, 121 F.3d at 833 ("'Subsidiary questions, such as the length and circumstances of [an] interrogation, or whether 'the police engaged in the intimidation tactics alleged by the defendant,' are entitled to the presumption of correctness.'"); Holland v. Donnelly, 216 F. Supp. 2d 227, 231 (S.D.N.Y. 2002) (holding that determinations about the events leading up to a confession are "findings of historical fact [that] must be 'presumed to be correct' for purposes of this [habeas] petition.") (citations omitted).

Detectives testified at the Huntley Hearing that Petitioner voluntarily agreed to speak to them without an attorney.  The state court gave full credence to the testimony proffered by the detectives.  To memorialize Petitioner's decision to freely waive his rights and continue conversing with the police, the Miranda Waiver Form was signed by both the detectives and Petitioner.  Petitioner was explained each portion of the waiver form, indicated that he understood the form, initialed, and signed it.  Thus, Petitioner indicated an understanding regarding the voluntary waiver of his rights.

Moreover, additional pieces of evidence also support a finding of a free and voluntary waiver.  The interview lasted only twenty-four minutes and was, giving credit to the previous state court determinations, not accompanied by any physical abuse or coercion.  Furthermore, the prior state court findings determined that Broadnax was not incapacitated during this process.  The circumstances surrounding the interview indicated that it was conducted in a prompt and professional manner.  During the interview

28

Petitioner was informed and effectively waived his right to counsel.  Furthermore,

Petitioner had been previously arrested and was familiar with the process and what his

rights were.  Given Petitioner's prior experience with the criminal justice system, it is fair to

conclude that he was aware of the consequence of waiving said rights.

Petitioner also questions the trial judge's determination that the detectives' testimony

was credible while Petitioner's was not.  However, "[c]redibility determinations are properly

within the province of the state court that presided over the trial and evidentiary hearing."

Shabazz v. Artuz, 336 F.3d 154, 163 (2d Cir. 2003) (citing Patton v. Yount, 467 U.S. 1025,

1038 (1984)); United States v. Yousef, 327 F.3d 56, 124 (2d Cir. 2003).  As stated above,

these findings are entitled to a presumption of correctness under the statute.  Therefore,

the state court's allowance of the testimony regarding Petitioner's statements to police

should be given deference.  Furthermore, there is nothing in the record which indicated

that the court's overall legal conclusion was contrary to, or an unreasonable application of,

Supreme Court law.  For these reasons, it is recommended that this claim be denied.


### F.  Insufficient Evidence

The Petitioner also contends that the evidence was insufficient to support a conviction

for Murder in the Second Degree.  He specifically claims that the government failed to

prove the element of intent.  This claim is also without merit.

A habeas Petitioner who claims that the evidence was not sufficient to sustain a

conviction bears a "heavy burden."  United States v. Pierce, 224 F.3d 158, 164 (2d Cir.

2000).  Generally, issues related to the weight of the evidence and the credibility of the

witnesses are determinations for the jury and are not grounds for reversal.  United States

v. Vasquez, 267 F.3d 79, 91 (2d Cir. 2001); Maldonado v. Scully, 86 F.3d 32, 35 (2d Cir. 1996).  The court must determine if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Jackson v. Virginia, 443 U.S. 307, 319, (1979).  Under this rigorous standard, the court, "faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."  Wheel v. Robinson, 34 F.3d 60, 66 (2d Cir. 1994) (quoting Jackson, 443 U.S. at 326).

When reviewing a claim of insufficient evidence in a state conviction, "[a] federal court must look to state law to determine the elements of the crime."  Fama v. Comm'r of Corr. Servs., 235 F.d 804, 811 (2d Cir. 2000) (quoting Quartararo v. Hanslmaier, 186 F.3d 91, 97 (2d Cir. 1999)).  Petitioner was convicted of Murder in the Second Degree, N.Y. PENAL LAW § 125.25(1), Criminal Possession of a Weapon in the Second Degree, N.Y. PENAL LAW § 265.03(2), and Criminal Possession of a Weapon in the Third Degree, N.Y. PENAL LAW § 265.02(4).  "A person is guilty of murder in the second degree when: (1) With intent to cause the death of another person, he causes the death of such person or of a third person."  N.Y. PENAL LAW § 125.25(1).

The Appellate Division rejected Broadnax's claim on appeal, holding that the claim was without merit and the verdict was not against the weight of the evidence.  The court stated:

> Here, the People presented evidence establishing that defendant admitted to
> the police that he was at the location of the murder with the victim; a witness
> saw the victim engaged in a heated confrontation with another man
> immediately before hearing a gunshot; the victim died from a gunshot wound
> to the head, and the bullet was fired from the gun recovered from the

apartment of defendant's uncle, where defendant was located by the police; and the victim's blood was on one of defendant's boots and on defendant's pants, and blood spatter evidence established that defendant was within several feet of the location of the victim at the time of the shooting. Contrary to defendant's further contention, the verdict is not against the weight of the evidence.

People v. Broadnax 52 A.D.3d 1306, 1307, 861 N.Y.S.2d 875, 877 (N.Y. App. Div. 2008). The Petitioner specifically contends that the prosecution did not prove the element of intent. At trial, the prosecution relied on the circumstances of the case to prove intent. There was testimony that the victim and Petitioner had been fighting earlier in the evening when the victim came to his mother's house to speak with him and walked in on Petitioner while having sex with his girlfriend. The Petitioner then forced the victim to leave. A witness testified that he saw the victim engaged in a verbal altercation with another just prior to the shooting. The victim was shot in the head at close range. The fact that there was no direct evidence connecting Broadnax to the murder was irrelevant. Mallette v. Scully, 752 F.2d 26, 32 (2d Cir. 1984) (holding that while direct evidence is preferred, circumstantial evidence is legally sufficient because it "is as persuasive as direct evidence."). All that must be determined is whether a rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have found the elements of the crime present beyond a reasonable doubt. Given the aforementioned evidence, a rational juror could find that the Petitioner intentionally killed the victim. Therefore, Petitioner has again failed to demonstrate that the Appellate Division's denial of his insufficient evidence claim was contrary to or an unreasonable application of Supreme Court precedent.

For these reasons, it is recommended that this claim be denied.

## G. Brady Violation

The Petitioner claims that the prosecution violated Brady v. Maryland, 373 U.S. 83 (1963) by failing to make a timely disclosure of exculpatory evidence to defense counsel. The Appellate division denied this claim on the grounds that the statements of Holly Rao were not Brady material because "'[p]ossession of [the statement] would not have revealed any essential [exculpatory] information that the defense did not already know.'" People v. Broadnax, 52 A.D.3d 1306, 1307 (N.Y. App. Div. 2008) (quoting  People v. LaValle, 817 N.E.2d 341, 352 (N.Y. 2004)).

In Brady, the Supreme Court held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment."  373 U.S. at 87.  "It is well settled that evidence 'is not considered to have been suppressed within the meaning of the Brady doctrine if the defendant or his attorney either knew, or should have known of the essential facts permitting him to take advantage of [that] evidence.'"  United States. v. Torres, 129 F.3d 710, 717 (2d Cir. 1997) (quoting United States v. Gonzalez, 110 F.3d 936, 944 (2d Cir. 1997).  In order for a belated disclosure to constitute a Brady violation, "there must be 'a reasonable probability'—one 'sufficient to undermine confidence in the outcome'—that the jury would have resolved [Petitioner's] case differently had the prosecution disclosed the report on a timely basis."  Payne v. LeFevre, 825 F.2d 702, 707 (2d Cir. 1987) (quotations omitted) (finding no Brady violation occurred when a report was not turned over because "the report was duplicative of material which [Petitioner's] trial counsel already had in her possession and had actually used in cross-examin[ation] . . . .").

Here, the statement and grand jury testimony of Holly Rao were not turned over to the defense until the day the trial began.  In those statements, Rao stated that she overhead the Petitioner telling his uncle, Lloyd Broadnax, that the victim had taken a swing at him with a knife.  The defense argued that this would have supported a defense of self-defense.  Petitioner does not make a specific argument as to how the belated disclosure prejudiced him, but at the time, defense counsel argued that this belated disclosure prejudiced the defense because they had already determined a strategy of denial as opposed to self-defense.  The trial court, as well as the Appellate Division denied this claim because the defense was already aware of the information provided in Holly Rao's statement.  They had Lloyd Broadnax's statement in which he described the exchange between himself and the Petitioner, as well as the Petitioner himself who was a party to the conversation.  Furthermore, defense counsel told the trial judge that their investigator interviewed Holly Rao.  Because the defense was aware of this conversation through the statement of Lloyd Broadnax, as well as the Petitioner, the statement and grand jury testimony of Holly Rao was not Brady material.  Even if it were Brady material, its timely disclosure would not have changed the outcome of the trial.  Therefore, the determination of the Appellate Division in denying this claim was not contrary to or an unreasonable application of Supreme Court precedent.

For these reasons, it is recommended that this ground be denied.

### H. Newly Discovered Evidence

Finally, the Petitioner claims that his conviction should be set aside because of

newly discovered evidence in the form of an affidavit signed by Lloyd Broadnax, in which

Lloyd Broadnax recants his statements to police and the grand jury, instead claiming that

he found the gun the night before the shooting and kept it.  He claims that Petitioner never

gave the gun to him.  The trial court determined that the affidavit was "patently

unbelievable" and the appellate division affirmed.  People v. Broadnax, 52 A.D.3d 1306,

1308 (N.Y. App. Div. 2008).

A federal right to be "released [from prison] upon proof of actual innocence . . . is an

open question . . . [with] some cases assuming, arguendo, that it exists while also noting

the difficult questions such a right would pose and the high standard any claimant would

have to meet."  Dist. Att'y's Office for Third Judicial Dist. v. Osborne, 129 S. Ct. 2308,

2321 (2009) (citing House v. Bell, 547 U.S. 518, 554-55 (2006) (declining to resolve issue

of whether freestanding innocence claims are cognizable yet commenting that, even if in

existence, Petitioner failed to meet such a claim's elevated burden); Herrera v. Collins,

506 U.S. 390, 398-405 (1993)); see also Friedman v. Rehal, 618 F.3d 142, 159 (2d Cir.

2010) (discussing unresolved status of federal constitutional right to be released upon

proof of actual innocence and the elevated burden such a claimant would be required to

meet).  "[T]he absence of any Supreme Court decision concerning this type of claim

[provides] . . . no basis for concluding . . . [that there was] an unreasonable application of

clearly established Federal law as determined by the Supreme Court . . . ."  Hines v. Miller,

318 F.3d 157, 164 (2d Cir. 2003).  Thus, there is no basis for habeas relief.

However, assuming such an actual innocence claim was available, Broadnax has

failed to establish facts sufficient to receive such relief.  "[T]he threshold showing for such

an assumed right would necessarily be extraordinarily high." <u>Herrera</u>, 506 U.S. at 417.  In a previous decision discussing the intricacies of an actual innocence claim, the Supreme Court stated in <u>Schlup</u> that "[t]o be credible, [claims of actual innocence] . . . require[] Petitioner to support his allegations of constitutional error with new reliable evidence— whether it be exculpatory scientific evidence, trustworthy eye witness accounts, or critical physical evidence . . . ." <u>Schlup v. Delo</u>, 513 U.S. 298, 324 (1995).  However, later decisions indicate that the Supreme Court would "require[] more convincing proof of innocence than <u>Schlup</u>," for a claim of freestanding innocence to stand.  <u>House</u>, 547 U.S. at 555.

Here, Lloyd Broadnax's affidavit is contradicted by his previous statements to police and the grand jury, as well as by those of Holly Rao.  This must also be evaluated keeping in mind that the Second Circuit has continually "looked upon [witness recantations] with the utmost suspicion." <u>Haouari v. United States</u>, 510 F.3d 350, 353 (2d Cir. 2007) (citations omitted).  Moreover, the evidence also could have been produced at trial with the exercise of due diligence because Lloyd Broadnax had been interviewed and was available at the time of trial.  For these reasons, it is recommended that this ground be denied.

## III. CONCLUSION

For the reasons stated above, it is recommended that the petition for a writ of habeas corpus (Dkt. No. 1) be **DENIED**.

Furthermore, the Court finds that Petitioner has not made a "substantial showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c)(2) ("A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."); see also Lucidore v. New York State Div. of Parole, 209 F.3d 107, 112 (2d. Cir. 2000).  Therefore, the Court recommends that no certificate of appealability should issue with respect to any of Petitioner's claims.

It is further **ORDERED**, that the Clerk of the Court serve a copy of this Report–Recommendation and Order upon the parties to this action.  Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.   Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  Roldan, 984 F.2d at 89 (citing Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

**IT IS SO ORDERED.**

Dated: September 17, 2012
        Albany, New York

Christian F. Hummel
U.S. Magistrate Judge

36