**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**ANTONIO BROADNAX,**

                                    **Petitioner,**

        **vs.**                                                    **9:11-CV-21**
                                                                   **(MAD/CFH)**

**JAMES CONWAY, Superintendent,**
**Attica Correctional Facility,**

                                    **Respondent,**
_____

**APPEARANCES:**                              **OF COUNSEL:**

**ANTONIO BROADNAX**
DIN 04-B-2597
Sing Sing Correctional Facility
354 Hunter Street
Ossining, New York 10562-5442
Petitioner *pro se*

**OFFICE OF THE NEW YORK**               **PAUL B. LYONS, AAG**
**STATE ATTORNEY GENERAL**
120 Broadway
New York, New York 10271
Attorneys for Respondent

**Mae A. D'Agostino, U.S. District Judge:**

### MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

        On July 24, 2004, Petitioner was convicted of Murder in the Second Degree, and Criminal

Possession of a Weapon in the Second and Third Degrees after a jury trial in Onondaga County.

Petitioner commenced this action seeking habeas corpus relief pursuant to 28 U.S.C. § 2254 on

the following grounds: (1) he was denied effective assistance of counsel; (2) his *Miranda* rights

were violated; (3) the prosecution committed a *Brady* violation; (4) he was convicted based on

insufficient evidence; and (5) there is newly discovered evidence.  *See* Dkt. No. 1.

Currently before the Court are Petitioner's objections to Magistrate Judge Hummel's Report and Recommendation in which he recommended that this Court deny the petition. *See* Dkt. No. 19.

## II. BACKGROUND[1]

**A.    Facts**

On the evening of September 29, 2003, Antonio Broadnax ("Petitioner") shot and killed Steffon Gabriel in the City of Syracuse. *See* Dkt. No. 13-1 at 75-76.[2]  Gabriel was shot in the head. *See id.* at 428-29.  Petitioner's brother, Michael Broadnax, and mother, Scarlett Broadnax, were standing at the scene when police arrived. *See id.* at 64.  After questioning Michael and Scarlett Broadnax and the victim's girlfriend, Petitioner became the main suspect in the murder. *See id*. at 83-85.  Michael and Scarlett Broadnax both told police that they saw Petitioner fleeing the scene of the murder just after hearing the gunshot and that he look frightened. *See id*. at 74-76.

Police arrested Petitioner after discovering outstanding warrants for his arrest in New York City. *See* Dkt. No. 13-23 at 48, 54.  Based upon those warrants, he was arrested at the home of his uncle, Lloyd Broadnax. *See id*. at 48-54.  Holly Rao, Lloyd Broadnax's girlfriend, was also present and told police that a gun was hidden in a storage room outside the apartment. *See* Dkt. No. 13-1 at 76.  Police later found a gun and magazine inside a cereal box in that storage room. *See* Dkt. No. 13-25 at 183-90.  Police determined that the gun found in the storage room matched

---

[1]  Since the parties have not objected to Magistrate Judge Hummel's factual recitation, the Court has adopted the "Background" facts from his September 17, 2012 Report and Recommendation.

[2]  To avoid confusion, anytime the Court references a specific page number for an entry on the docket, it will cite to the page number assigned by the Court's electronic filing system.

the cartridge casings found at the crime scene and the bullet in the victim.  *See id.* at 189, 235-41.

Petitioner was then brought to the Criminal Investigation Divsion (C.I.D.) of the Syracuse police department where he was questioned by police regarding Gabriel's murder.  *See* Dkt. No. 13-23 at 55-56.  Petitioner told police that Gabriel had come to his apartment earlier in the evening and began banging on his bedroom door while he was in the bedroom with his girlfriend. *See id.* at 89.  Gabriel walked in on Petitioner while he was having sex with his girlfriend and accused Petitioner of owing him money.  *See id.* at 89-90.  Petitioner then stated that he left the bedroom to confront Gabriel, whom Petitioner claimed had a knife.  *See id.* at 90.  Gabriel's girlfriend, along with one of Petitioner's family members, then removed Gabriel from the apartment.  *See id.* at 90-91.  Petitioner then walked his girlfriend home and, on his return to the apartment, encountered Gabriel at the phone booth on the corner of Salina and Laurel Streets.  *See id.* at 91.  They had a verbal exchange and according to Petitioner, Gabriel "took a swing" at him. *See id.*  Petitioner told police that he then walked away.  *See id.*  Police asked Petitioner whether he killed Gabriel, at which point Petitioner stated that if he was arrested he was never leaving jail again, and requested a lawyer.  *See id.* at 92-93.  Police also found blood on Petitioner's shoes that matched Gabriel's DNA.  *See* Dkt. No. 13-25.

Petitioner was later arrested, tried, and convicted of Murder in the Second Degree and Criminal Possession of a Weapon in the Second and Third Degree.  *See* Dkt. No. 13-1 at 7.

**B.**    ***Huntley* Hearing**[3]

In April 2004, a suppression hearing was held, during which three detectives and Petitioner testified.  *See* Dkt. 13-23 at 38-213.  Syracuse Police Sergeant Gerald Birardi testified

---

[3]  *People v. Huntley*, 15 N.Y.2d 72 (1965).

that some time after 10:00 a.m. on September 30, 2003, he and other detectives arrested

Petitioner, based on unrelated outstanding warrants, at the home of Petitioner's uncle, Lloyd

Broadnax, in Syracuse, New York.  *See id*. at 41-54.  Petitioner was then transported to the C.I.D.

of the Syracuse police station and placed in an interview room.  *See id*. at 55-56.  According to

Birardi, Petitioner did not ask for counsel and he was handcuffed when Birardi left the interview

room.  *See id*. at 69, 71.

Syracuse Police Detectives Karl Schmidt and Ivan Jimenez testified that at approximately

11:35 a.m., they met Petitioner in a C.I.D. interview room.  *See id*. at 79, 175.  Detective Schmidt

testified that Petitioner did not appear intoxicated at the time of the interview and both detectives

testified that he was cooperative.  *See id*. at 81-82, 178.  Detective Schmidt testified that the

detectives then read Petitioner his *Miranda* rights from a cover sheet.  *See id*. at 82.  Detective

Jimenez read the rights to Petitioner and Petitioner initialed next to each right after it was

explained.  *See id*. at 84-86.  The detectives then asked Petitioner if he was willing to discuss

Gabriel's homicide with them and he consented.  *See id*. at 86.  Petitioner then signed the *Miranda*

form.  *See id*.  Detective Schmidt also testified that Petitioner did not request a lawyer and that no

threats or promises were made to him.  *See id*. at 87-88.

Petitioner told the detectives that he had a verbal altercation with Gabriel earlier in the

evening at his mother's apartment where he lived.  *See id*. at 89-90.  He then walked his girlfriend

home and, upon his return, encountered Gabriel at the phone booth.  *See id*. at 91.  They had

another verbal altercation and Gabriel "took a swing" at Petitioner.  *See id*.  Petitioner told the

detectives that he then walked away.  *See id*.  When asked if he killed Gabriel, Petitioner

responded that if he were arrested he was never leaving jail again.  *See id*. at 92.  At this point,

Petitioner asked to speak with a lawyer and the interview ended.  *See id*. at 92, 94.

Detective Jimenez largely confirmed the testimony of Detective Schmidt.  *See* Dkt. No. 13-23 at 171-81.  Detective Jimenez, however, did not recall Petitioner saying anything more when asked if he had murdered Gabriel.  *See id*. at 180-81.  Both Detectives testified that the interview lasted approximately twenty to thirty minutes.  *See id*. at 92, 181.

Petitioner testified that he did not initial the *Miranda* form and signed it without reading it.  *See id*. at 135.  He also testified that the detectives never actually read his rights to him.  *See id*. at 136.  Petitioner testified further that he repeatedly requested a lawyer but the detectives continued questioning him and kept him in the interview room for hours.  *See id*. at 137-44.  He denied saying anything to police about Gabriel's murder.  *See id*. at 137, 140-44.  He also claimed that he was threatened with a harsh sentence if he did not confess and was punched in the stomach in an effort to get him to talk about the homicide.  *See id*. at 137, 139-141, 143.

At the conclusion of the hearing, the court orally issued findings of fact and conclusions of law.  The court found that Petitioner's hearing testimony was "incredible," and "len[t] no truth or v[e]racity to that testimony at all."  *See id*. at 211.  Based upon the credible testimony of the police witnesses, the court found that Petitioner was properly advised of his *Miranda* rights prior to questioning, and that Petitioner initialed and signed the *Miranda* waiver form, indicating that he understood his rights and was willing to talk to the detectives without an attorney.  *See id*. at 206-10.  The court further found that Petitioner was not intoxicated at the time of the interview, and that Petitioner's waiver of his rights and oral statements to the detectives were not induced through threats, promises, or physical abuse.  *See id*. at 208-10.  The court thus concluded that Petitioner's oral statements to the police during the interview were admissible, as they were knowing, intelligent, and voluntary beyond a reasonable doubt.  *See id*. at 209-11.

**C.     The Trial**

On the day the trial began, the prosecution turned over the grand jury testimony and police statement of Holly Rao, Lloyd Broadnax's girlfriend.  *See* Dkt. No. 13-25 at 2-4.  In those statements, Rao claimed that on the night of the murder, she overheard Petitioner tell Lloyd Broadnax that Gabriel had attacked him with a knife, and he feared for his life.  *See id.* at 4-6. Petitioner's counsel made a motion for a mistrial based upon a *Brady* violation.[4]  *See id.* at 2.  The court denied the motion, finding that the statements were not *Brady* material because Petitioner had access to that information through Lloyd Broadnax's statement and through Petitioner himself, because both were parties to the conversation.  *See id*. at 9-11.  The court further found that Petitioner was not prejudiced by the belated disclosure because Holly Rao was not testifying that day, leaving the defense time to prepare.  *See id.* at 11.

The Prosecution's case rested primarily on circumstantial evidence and the testimony of the police officers involved.  During the trial, Detective Hamberger first testified that he interviewed both Michael and Scarlett Broadnax.  *See id.* at 76-77.  The detective testified that after talking to those witnesses several times and for several hours, Petitioner was the main suspect in Gabriel's murder.  *See id*. at 84-85.  Hamberger never testified as to any actual statements made by either witness, only that he interviewed them.  *See id*. at 74-86.  Detective Jimenez again offered testimony, which was consistent with the testimony he provided during the *Huntley* hearing.  *See id*. at 370-88.  Namely, he discussed how Petitioner agreed to speak to the police without counsel present and then told Jimenez that Gabriel showed up at the apartment, walked in on Petitioner and his girlfriend having sex, brandished a knife, and was promptly

---

[4] Under *Brady v. Maryland*, 373 U.S. 83 (1963), the prosecution is required to make timely disclosures of all exculpatory evidence to the defense.

removed from the apartment.  *See id*. at 380-81.  Petitioner then walked his girlfriend home and saw Gabriel as he was returning to the apartment.  *See id*. at 381-82.  Gabriel began arguing with Petitioner, "took a swing at him," and then Petitioner left to go home.  *See id*. at 382.

The medical examiner testified that the cause of death was a single gunshot wound to the head, and based upon the autopsy and her medical opinion, the manner of death was homicide, as stated on Gabriel's death certificate.  *See id*. 433-34.  Moreover, police recovered a shell casing from the sidewalk by the victim and the bullet from the victim, but did not recover a knife.  *See id*. at 114-25, 434-37.  A witness also testified that he had seen a man at the phone booth where Gabriel's body was found, and another man yelling at him only moments before hearing a gunshot.  *See id*. at 400-02.

When police executed a search warrant of Lloyd Broadnax's home, where Petitioner had been staying and was arrested, a loaded nine millimeter, semi-automatic handgun was recovered. *See id*. at 182-92, 199-201, 213-18.  Ballistics determined that the shell casing found at the scene of the crime as well as the bullet recovered from the victim were both discharged from that gun. *See id*. at 226-36, 238-41, 262-81.  An expert in blood spatter testified that the blood drops found on Petitioner's boots were consistent with small droplets of blood that might project downward from shooting someone from only a few feet away.  *See id*. at 129-31.  DNA evidence later confirmed that this blood was from the victim.  *See id*. at 321-31, 357-58.

Thomas Niland, the vice-president of the company where Lloyd Broadnax worked, also testified.  *See id*. at 206-08.  The Prosecutor had asked Niland to check the time records from the evening of the murder.  *See id*. at 208-09.  Niland testified that company records showed that Lloyd Broadnax had been working from six p.m. to ten p.m. that night.  *See id*. at 209.

During the closing arguments, the Prosecution stated that Petitioner had admitted to

killing Gabriel when he told police that he was never getting out of jail if arrested.  *See id*. at 476.

The Prosecution also stated in summation that intent had been proven through the fact that

Gabriel was shot in the head.  *See id.* at 478.  The Prosecution further stated that it was

uncontroverted that Petitioner had his *Miranda* rights read to him.  *See id*. at 482.  Petitioner's

counsel countered the Prosecution by arguing in summation that the Prosecution was improperly

trying to imply guilt through Petitioner's assertion of his right to counsel.  *See id*. at 469-70.

Moreover, Petitioner's counsel argued that the detectives who recalled Petitioner stating that he

was never getting out of jail had not taken any notes during the interview and could not remember

other details of their encounter with Petitioner.  *See id*.  Petitioner was convicted on all charges.

*See id*. at 623-26.

   After the trial concluded, Lloyd Broadnax signed an affidavit in which he stated that he

found the murder weapon the night before the shooting and kept it in his apartment.  *See* Dkt. No.

13-26 at 287-88.  Petitioner then made a motion to set aside the verdict based upon this newly

discovered evidence.  *See id*. at 288.  The court found the affidavit to be "patently unbelievable,"

given the affidavit of Holly Rao and the blood evidence found on Petitioner.  *See id*. at 290-93.

The court also found that the evidence could have been discovered by simply talking to Lloyd

Broadnax.  *See id*. at 293.  Finally, the court concluded that the affidavit would not have changed

the outcome of the trial and, therefore, the motion was denied.  *See id*. at 295-96.


**D.     Appeals**

   Petitioner was convicted of Murder in the Second Degree and Criminal Possession of a

Weapon in the Second and Third Degrees.  *See* Dkt. No. 13-1 at 8.  Petitioner filed a direct appeal

in the Appellate Division, Fourth Department, asserting the following: (1) the Prosecution

8

violated *Brady* by failing to timely produce Holly Rao's police statement and grand jury testimony; (2) the conviction for second-degree murder was against the weight of the evidence and based on insufficient evidence; and (3) newly discovered evidence in the form of an affidavit from Lloyd Broadnax had "cast significant doubt upon the verdict." *See* Dkt. No. 13-4.

On June 13, 2008, the Appellate Division unanimously affirmed the conviction. *See People v. Broadnax*, 52 A.D.3d 1306 (4th Dept. 2008). The court held that the statement and testimony of Holly Rao did not constitute *Brady* material because the information was available to Petitioner because he was a party to the conversation, it was also available through Lloyd Broadnax, and it would not have revealed any essential information that Petitioner did not already know. *See id.* at 1307. The court also held that the claim of insufficient evidence, with respect to the element of intent, was not preserved for review. *See id.* However, the court found that in any event the claim was without merit because intent may be inferred from the defendant's conduct and the circumstances surrounding the crime; thus, the Prosecution had presented sufficient evidence with regard to intent. *See id*.

The court also rejected the claim that the county court erred in denying Petitioner's motion pursuant to CPL § 330.30(3) to set aside the verdict on the ground of newly discovered evidence. *Broadnax*, 52 A.D.3d at 1307-08. The court found that the trial court properly determined that the affidavit prepared by Lloyd Broadnax was not believable. *See id.* at 1308. The court also held that, in any event, the evidence could have been produced at trial with the exercise of due diligence and it would not have produced a different result at trial. *See id*. Petitioner then sought leave to appeal to the Court of Appeals, raising the same claims raised in the Appellate Division. *See* Dkt. No. 13-7 at 2-3. The Court of Appeals denied leave on October 30, 2008. *See* Dkt. No. 13-9.

Petitioner filed a *coram nobis* petition in the Appellate Division on May 7, 2009, asserting that his appellate counsel on direct appeal erred by (1) not asserting a claim that the admission of his statements to police violated his *Miranda* rights; (2) not asserting that Petitioner's trial counsel erred in not objecting to Detective Hamberger's testimony that Petitioner became a suspect after speaking to his mother, grossly delaying the appeal, and failing to file a motion for DNA testing under CPL § 440.30(1-A). *See* Dkt. No. 13-10 at 2-3, 10-14. The Appellate Division summarily denied the motion. *People v. Broadnax*, 66 A.D.3d 1499 (N.Y. App. Div. 2009). Petitioner sought leave to appeal to the Court of Appeals, which the Court of Appeals denied. *People v. Broadnax*, 14 N.Y.3d 770 (N.Y.2010).

Petitioner filed a CPL § 440.10 motion on September 19, 2009, in Onondaga County Court to vacate his judgment of conviction. *See* Dkt. No. 13-16 at 2. He claimed that his trial counsel erred by failing to object to: (1) police testimony that Petitioner became a suspect after his mother was interrogated; (2) the Prosecution's characterization of Petitioner's statements to the police as a confession; (3) the medical examiner's testimony that the cause of death was homicide; and (4) the Prosecutor's summation remark, implicitly commenting upon Petitioner's failure to testify. *See id*. at 6-13. Petitioner also argued that the admission of Petitioner's oral statements to the police violated his *Miranda* rights. *See id*. On January 29, 2010, the court denied the motion without a hearing. *See* Dkt. No. 13-19 at 2-7. The court determined that the claims were procedurally barred as they could have been raised on direct appeal and that sufficient facts appeared on the record to permit appellate review of such claims in accordance with CPL § 440.10(2)(c). *See id*. at 4-5.

The court found that, in any event, the claims were "legally and factually insufficient" to support a finding of ineffective assistance of counsel. *See id*. at 5. The court determined that "the

defense attorney vigorously pursued appropriate motions and objections and during trial which exhibited a thorough grasp of the factual issues and knowledge of the applicable law." *See id*. at 6. The court also held that the failure of an attorney to object on meritless grounds does not render his assistance ineffective. *See id*. As such, the court denied the petition in all respects. *See id*. Petitioner sought leave to appeal which, on December 28, 2010, the Appellate Division summarily denied. *See* Dkt. No. 13-21 at 2; *see also* Dkt. No. 13-22 at 2.

On January 7, 2011, Petitioner, proceeding *pro se*, filed a petition seeking habeas corpus relief pursuant to 28 U.S.C. § 2254. *See* Dkt. No. 1. In his petition, Petitioner raises the following claims: (1) he was denied effective assistance of counsel; (2) his *Miranda* rights were violated; (3) the prosecution committed a *Brady* violation; (4) he was convicted based on insufficient evidence; and (5) there is newly discovered evidence. *See id*.

On September 17, 2012, Magistrate Judge Christian F. Hummel recommended denying the petition. *See* Dkt. No. 19 at 2. Magistrate Judge Hummel determined that Petitioner's claim that the failure to object to Niland's testimony amounted to ineffective assistance of counsel was procedurally defaulted because it was not raised in state proceedings and because Petitioner failed to show cause and prejudice resulting from the procedural default. *See id*. at 14. The court also recommended denying the four additional claims for ineffective assistance of counsel as well as the Sixth amendment right to counsel claim, finding that these claims were procedurally barred in federal court because they had been dismissed based upon independent and adequate state law grounds, pursuant to CPL § 440.10(2)(c). *See id*. at 17. Magistrate Judge Hummel found that Petitioner had not offered any cause for or prejudice resulting from his procedural default, and he failed to establish that a miscarriage of justice would result if the claims were not heard by the federal court. *See id.* at 18.

Despite determining that the claims were procedurally barred, Magistrate Judge Hummel also determined that Petitioner's claims should be denied on the merits, pursuant to 28 U.S.C. § 2254(b)(2). *See id.* at 19. Magistrate Judge Hummel concluded that counsel's performance was consistent with adequate representation, and afforded deference to the conclusions reached by the state courts that counsel had performed effectively. *See id.*

Specifically, he found that trial counsel's failure to object to Detective Hamberger's testimony did not constitute ineffective assistance of counsel because Hamberger's testimony did not violate the *Trowbridge* rule, and even if it did, violations of the *Trowbridge* rule are not cognizable on habeas review. *See id.* at 20. Since this objection would have been meritless, Petitioner's counsel was not ineffective for choosing not to engage in this argument. *See id.* at 21.

Similarly, Magistrate Judge Hummel determined that Petitioner's claim that trial counsel was ineffective in not objecting to a statement in the Prosecution's summation that he admitted killing Gabriel was also meritless, because the "Prosecutor never actually referred to the statement as a confession" and Petitioner failed to make any showing as to how he was prejudiced by the statement. *See id.* at 22.

While Magistrate Judge Hummel did conclude that counsel erred in failing to object to the medical examiner's testimony that the victim's cause of death was homicide, he found that this error was not significant enough to give rise to an ineffective assistance of counsel or due process claim. *See id.* at 23. Moreover, Magistrate Judge Hummel concluded that counsel's alleged failure in this regard could have been a strategic choice by Petitioner's counsel and was entitled to a high degree of deference. *See id.* at 23.

Similarly, Magistrate Judge Hummel found that trial counsel's failure to object to the

testimony of Thomas Niland was also a strategic decision entitled to a high degree of deference, and did not amount to ineffective assistance of counsel. *See id*. at 25. Finally, Magistrate Judge Hummel recommended denying the claim that trial counsel should have objected to the Prosecutor's statement that it was uncontradicted that detectives went over Petitioner's rights with him. *See id*. at 25. Contrary to Petitioner's argument that this statement implicitly referred to his failure to testify, the court concluded that a "prosecutor is allowed to make reference to evidence being uncontradicted without violating the defendant's Fifth Amendment right." *See id*.

The court also recommended denying Petitioner's claim that his Sixth Amendment right to counsel was violated when statements he made to police without counsel present were admitted during the trial. *See id*. at 28. Magistrate Judge Hummel concluded that the presumption of correctness of the state court's determinations was further supported by evidence showing that Petitioner freely and voluntarily waived his rights. *See id*. Additionally, Magistrate Judge Hummel gave deference to the state court's determination that the detective's testimony was credible, while Petitioner's was not. *See id*. at 29.

Magistrate Judge Hummel also recommended that this Court deny Petitioner's claim that the evidence was insufficient to support his conviction because the government failed to prove the element of intent. *See id*. at 29. Magistrate Judge Hummel determined that, based upon the evidence, a "rational juror could find that Petitioner intentionally killed the victim," and Petitioner failed to demonstrate that the Appellate Division's denial of this claim was contrary or an unreasonable application of Supreme Court precedent. *See id*. at 31.

The Report and Recommendation also recommended denying Petitioner's claim that the admission of Holly Rao's statements constituted a *Brady* violation. *See id*. at 32. Consistent with the decisions of the state courts, Magistrate Judge Hummel concluded that the statements were

13

not *Brady* material because the "defense was already aware of the information provided in Holly Rao's statement," and furthermore, even if the statements were *Brady* material, their timely disclosure would not have changed the outcome of the trial. *See id.* at 33.

The Report and Recommendation also recommended denying Petitioner's claim that his conviction should be set aside based on the newly discovered evidence in the form of an affidavit signed by Lloyd Broadnax. *See id*. at 33. Magistrate Judge Hummel found that the newly discovered evidence failed to show convincing proof of innocence, as the affadavit is contradicted by Lloyd Broadnax's previous statements to police and the grand jury, as well as by Holly Rao's testimony. *See id*. Additionally, the evidence could have been produced at trial because Lloyd Broadnax had been interviewed by Petitioner's counsel and was available at the time of trial. *See id*.

Petitioner objects to Magistrate Judge Hummel's Report and Recommendations on the following grounds: (1) it was improper to determine that the ineffective assistance of counsel claims had been procedurally defaulted and these claims should not be precluded from review because the underlying factual bases for the claims were not present on the record at the time of appeal; (2) the Magistrate Judge erred in denying the ineffective assistance of counsel claims on the merits; and (3) the Magistrate Judge adopted a narrow definition of what constitutes *Brady* material that is inconsistent with precedent and erred in concluding that Petitioner was not prejudiced by the late disclosure. *See* Dkt. No. 20 at 5-15.

## III. DISCUSSION

### A.    Standard of Review

When a party makes specific objections to a magistrate judge's recommendations, the

district court engages in *de novo* review of the issues raised in the objections.  *See Farid v. Bouey*,

554 F. Supp. 2d 301, 307 (N.D.N.Y. 2008) (citation omitted).  When a party fails to make specific

objections, however, the court reviews the magistrate judge's recommendations for clear error.

*See id.* at 306 (citation omitted); *see also Gamble v. Barnhart*, No. 02CV1126, 2004 WL

2725126, *1 (S.D.N.Y. Nov. 29, 2004) (citations omitted).

 The enactment of the Antiterrorism and Effective Death Penalty Act ("AEDPA") brought

about significant new limitations on the power of a federal court to grant habeas relief to a state

prisoner under 28 U.S.C. § 2254.  In discussing this deferential standard, the Second Circuit noted

in *Rodriguez v. Miller*, 439 F.3d 68 (2d Cir. 2006), *cert. granted, judgment vacated and cases

remanded on other grounds by* 549 U.S. 1163 (2007), that

> a federal court may award habeas corpus relief with respect to a
> claim adjudicated on the merits in state court only if the
> adjudication resulted in an outcome that: (1) was "contrary to, or
> involved an unreasonable application of, clearly established Federal
> law, as determined by the Supreme Court of the United States"; or
> (2) was "based on an unreasonable determination of the facts in
> light of the evidence presented in the State court proceeding."

*Id*. at 73 (quoting 28 U.S.C. § 2254 (d)) (footnote omitted); *see also DeBerry v. Portuondo*, 403

F.3d 57, 66 (2d Cir. 2005) (quotation omitted); *Miranda v. Bennett*, 322 F.3d 171, 178 (2d Cir.

2003) (quotation omitted).

 In providing guidance concerning the application of this test, the Second Circuit has

observed that

> a state court's decision is "contrary to" clearly established federal
> law if it contradicts Supreme Court precedent on the application of
> a legal rule, or addresses a set of facts "materially
> indistinguishable" from a Supreme Court decision but nevertheless
> comes to a different conclusion than the Court did.  [*Williams v.
> Taylor*, 529 U.S. 362] at 405-406, 120 S. Ct. 1495 [(2000)];
> *Loliscio v. Goord*, 263 F.3d 178, 184 (2d Cir. 2001). . . . [A] state
> court's decision is an "unreasonable application of " clearly

> established federal law if the state court "identifies the correct
> governing legal principle from [the Supreme] Court's decisions but
> unreasonably applies that principle to the facts" of the case before
> it.  *Williams*, 529 U.S. at 413, 120 S. Ct. 1495.

*Thibodeau v. Portuondo*, 486 F.3d 61, 65 (2d Cir. 2007); *see also Williams v. Artuz*, 237 F.3d 147, 152 (2d Cir. 2001) (citing *Francis S. v. Stone*, 221 F. 3d 100, 108-09 (2d Cir. 2000)).

Significantly, a federal court engaged in habeas review is not charged with determining whether a state court's determination was merely incorrect or erroneous, but instead whether such determination was "objectively unreasonable." *Williams v. Taylor*, 529 U.S. 362, 409 (2009); *see also Sellan v. Kuhlman*, 261 F.3d 303, 315 (2d Cir. 2001) (citation omitted).  Courts have interpreted "objectively unreasonable" in this context to mean that "some increment of incorrectness beyond error" is required for the habeas court to grant the application. *Earley v. Murray*, 451 F.3d 71, 74 (2d Cir. 2006) (quotation omitted).

A state court determines a petitioner's federal claim "on the merits" and triggers the highly-deferential AEDPA standard of review when the state court "(1) disposes of a claim 'on the merits,' and (2) reduces its disposition to judgment." *Sellan*, 261 F.3d at 312 (quotation omitted). In this regard, it is not necessary for the state court to refer explicitly to the particular federal claim or to the relevant federal case law. *See id*.  If, however, a state court does not adjudicate a petitioner's federal claim "on the merits," the state-court's decision is not entitled to AEDPA deference; and instead, the federal habeas court must apply the pre-AEDPA standard of *de novo* review to the state-court's disposition of the federal claim. *See Cotto v. Herbert*, 331 F.3d 217, 230 (2d Cir. 2003) (quoting *Aparicio v. Artuz*, 269 F.3d 78, 93 (2d Cir. 2001)).

**B.** **Exhaustion and Procedural Default**

In the petition before this Court, Petitioner raises for the first time the claim that trial

counsel rendered ineffective assistance of counsel by failing to object to Thomas Niland's testimony as hearsay.  Magistrate Judge Hummel agreed with Respondent, and recommended that this Court deem the claim to be procedurally barred because it was not raised in Petitioner's CPL § 440.10 motion or on direct appeal and was thus unexhausted.  *See* Dkt. No. 19 at 14.

A petitioner in custody pursuant to a judgment of a state court is entitled to federal habeas relief only if he has exhausted all available state court remedies.  *See* 28 U.S.C. § 2254(b)-(c).  A claim has been exhausted if it was fairly presented in the state courts, thereby giving the state the "opportunity to pass upon and correct" alleged violations of federal rights.  *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (quoting *Picard v. Connor*, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971)).  In an ineffective assistance of counsel claim, the "state courts should have been given the opportunity to consider all the circumstances and the cumulative effect of all the claims as a whole."  *Rodriguez v. Hoke*, 928 F.2d 534, 538 (2d Cir. 1991) (quoting *Grady v. LeFevre*, 846 F.2d 862, 865 (2d Cir. 1988)).  Thus, where the ineffective assistance of counsel claim can turn on the cumulative effect of the allegations as a whole, all of the allegations should be reviewed together.  *See id*.

In the present case, Petitioner alleges ineffective assistance of counsel based on five separate instances in which trial counsel did not raise an objection.  *See* Dkt. No. 1.  In Petitioner's CPL § 440 motion, he raised claims based on four of the instances, but has raised the claim based on counsel's failure to object to Niland's testimony for the first time in this proceeding.  As Magistrate Judge Hummel concluded, Petitioner should have raised this claim in his direct appeal because the trial record submitted on appeal contained sufficient facts to have enabled the Appellate Division to review the claim.  *See* Dkt. No. 19 at 14.  Since this claim has not been reviewed by the state courts, Petitioner has not exhausted all available state court

remedies.

If a petitioner has not exhausted his state court remedies, but no longer has remedies available in state court with regard to those claims, the habeas court has the power to "deem" the claim exhausted. *See Reyes v. Keane*, 118 F.3d 136, 139 (2d Cir. 1997). However, when the "petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred," federal habeas courts also must deem the claims procedurally defaulted. *See Aparicio*, 269 F.3d at 90 (citation omitted). The Second Circuit has observed that there is a critical distinction between the dismissal of a habeas claim on the ground that it was procedurally defaulted and a dismissal for failure to exhaust state remedies. *See Turner v. Artuz*, 262 F.3d 118, 123-24 (2d Cir. 2001). A dismissal for a procedural default is regarded as a disposition of the habeas claim on the merits. *See Aparicio*, 269 F.3d at 90.

Here, the claim is deemed exhausted because Petitioner is procedurally barred from bringing it in state court. He has already filed the one direct appeal and leave application to the Court of Appeals to which he is entitled. Further, he cannot raise the claim in a CPL § 440.10 motion for the reasons stated above. Since he has no available state court remedies to exhaust this claim, the claim is procedurally defaulted.

In order for a petitioner to overcome a procedural default, the petitioner must show both cause for the default and actual prejudice resulting from the alleged violation of federal law, or that the failure of the federal court to consider the claim will result in a fundamental miscarriage of justice. *See Coleman v. Thompson*, 501 U.S. 722, 748-50 (1991). A fundamental miscarriage of justice occurs if the constitutional violation has "probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

Here, Petitioner has failed to meet the requirements set forth in *Coleman*. He has offered no explanation as to the cause for the default, nor has he shown that any prejudice resulted from the failure of counsel to object to the claim. Finally, Petitioner has failed to show that a fundamental miscarriage of justice will result if the federal court does not consider the claim.

Based on the foregoing, the Court finds that Petitioner has procedurally defaulted on his ineffective assistance of counsel claim based on the failure of trial counsel to object to Thomas Niland's testimony.

## C.     Independent And Adequate State Law Grounds

Petitioner's four other bases for ineffective assistance of counsel claims, as well as his claim that the admission of his oral statements to detectives violated his Sixth Amendment right to counsel, and his claim that his conviction was based on insufficient evidence, were recommended for dismissal by Magistrate Judge Hummel as procedurally barred on independent and adequate state law grounds. *See* Dkt. No. 19 at 15. Federal habeas review of a state-court conviction is prohibited if a state court rested its judgment on a state law ground that is "independent of the federal question and adequate to support the judgment." *Coleman*, 501 U.S. at 729 (noting that the federal court resolution of the federal issue would merely be advisory where the state judgment is supported by independent and legal state grounds) (citations omitted). "This rule applies whether the state law ground is substantive or procedural." *Id.* (citation omitted). The independent and adequate state ground is jurisdictional, thus, if the state court "explicitly invokes a state procedural bar rule as a separate basis for decision[,]" the federal court is precluded from considering the merits of the federal claim in a habeas petition. *Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989).

In this case, the four ineffective assistance of counsel claims, Sixth Amendment right to counsel claim, and insufficiency of the evidence claims were denied by the county court on an independent state law ground that is adequate to support the judgment.  Petitioner failed to raise the ineffective assistance of counsel claims in his direct appeal, instead raising them for the first time in his subsequent motion to vacate.  Consequently, the county court denied the motion to vacate entirely upon procedural grounds, pursuant to CPL § 440.10(2)(c).  *See* Dkt. No. 13-19 at 5.

CPL § 440.10(2)(c) provides that "the court must deny a motion to vacate judgment . . . when [a]lthough sufficient facts appear on the record of the proceedings . . . no such appellate review . . . occurred owing to the defendant's . . . unjustifiable failure to raise such a ground or issues upon appeal[.]"  The Second Circuit has held that a denial of a claim under CPL § 440.10(2)(c) constitutes a firmly established and regularly followed categorization as a dismissal based upon adequate and independent state grounds.  *See Sweet v. Bennett*, 353 F.3d 135, 140-41 (2d Cir. 2003).

Petitioner's claims were first dismissed, prior to any discussion of the merits, pursuant to CPL § 440.10(2)(c).  Since the state court based its decision upon this firmly established state law ground that is both independent of the federal question and adequate to support the judgment, the four additional bases for Petitioner's ineffective assistance of counsel claims are procedurally barred and thus procedurally defaulted.

As discussed earlier, when a claim in a federal habeas petition is procedurally defaulted, it cannot be heard by the federal reviewing court "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."  *Coleman*, 501

20

U.S. at 750.  To establish legal cause for his procedural default, Petitioner must show that some external factor impeded his ability to comply with New York's procedural rules.  *See Murray*, 477 U.S. at 488.  Examples of external factors include interference by officials, ineffective assistance of counsel, or that the "factual or legal basis for a claim was not reasonably available" at trial or on direct appeal.  *Id*. at 488.

Here, Petitioner argues that these claims should not be precluded from review because the underlying factual basis for these claims was not present on the record to permit appellate review of the claim.  However, Petitioner has not offered any explanation as to how or why the factual basis for these claims would not have been present on the record at trial or on direct appeal, and this Court finds no evidence to suggest that these claims were not available to be presented to the state courts.  Additionally, Petitioner has failed to show any prejudice resulting from the procedural default of these claims.  Consequently, the four additional claims for ineffective assistance of counsel, the Sixth Amendment right to counsel claim, and the challenge to the sufficiency of the evidence claim are dismissed because they were denied by the state courts on independent and adequate state law grounds.

Although the Court finds that Petitioner has procedurally defaulted on these claims, the Court will still, in the alternative, address these claims on the merits.  *See Lucas v. Conway*, No. 08 Civ. 8405, 2009 WL 2525489, *5 (S.D.N.Y. July 16, 2009) (holding that "the law is clear that a habeas court may deny a claim on the merits despite a petitioner's failure to exhaust it fully before the state courts" (citing 28 U.S.C § 2254(b)(2); *Rhines v. Weber*, 544 U.S. 269, 277 (2005)).

**D.      Merits of the Petition**

### 1. *Ineffective assistance of counsel*

In addition to being procedurally defaulted, Petitioner's claim that he was denied the effective assistance of trial counsel is both legally and factually insufficient. The basis for his claim is that trial counsel was ineffective by failing to make several objections. *See* Dkt. No. 1 at 5.

In order to prove ineffective assistance of counsel, a petitioner must show that (1) "counsel's representation fell below an objective standard of reasonableness" and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 688, 694 (1984). The habeas petitioner bears the burden of establishing both deficient performance and prejudice. *See United States v. Birkin*, 366 F.3d 95, 100 (2d Cir. 2004) (citation omitted).

To determine whether a counsel's performance was effective, the court examines the counsel's overall performance as reflected in the record. *See Kimmelman v. Morrison*, 477 U.S. 365, 386 (1986). Additionally, there is no cognizable claim for ineffective assistance of counsel where the counsel decided to focus on some issues rather than others, because the court presumes counsel's choice was based on strategic and tactical reasons. *See Yarborough v. Gentry*, 540 U.S. 1, 8 (2003). Further, counsel cannot be found to be ineffective for failing to assert a meritless objection. *See United States v. Arena*, 180 F.3d 380, 396 (2d Cir. 1999) ("Failure to make a meritless argument does not amount to ineffective assistance"), *cert. denied*, 531 U.S. 811 (2000); *United States v. Kirsh*, 54 F.3d 1062, 1071 (2d Cir. 1995) (holding that "the failure to make a meritless argument does not rise to the level of ineffective assistance"), *cert. denied*, 516 U.S. 927 (1995).

In this case, because the state court which undertook review of the CPL § 440.10 motion

found that Petitioner's trial counsel rendered meaningful assistance to Petitioner, AEDPA deference applies. *See* Dkt. No. 13-19 at 5.  The court found that there was "nothing in the record to cast doubt upon the apparent effectiveness of the defendant's attorney.  Clearly, the defense attorney vigorously pursued appropriate motions and objections" and "exhibited a thorough grasp of the factual issues and knowledge of the applicable law." *See id.* at 6.  Both the state court in the CPL § 440.10 motion and Magistrate Judge Hummel correctly determined that each of the potential objections raised by Petitioner in his ineffective assistance of counsel claims were without merit.  *See* Dkt. No. 13-19 at 4-6.

Based on the foregoing, the Court finds that, in the alternative, Petitioner's ineffective assistance of counsel claim is without merit.

### 2. *Brady*[5] *Violation*

Petitioner claims that he was denied his right to a fair trial because the prosecution failed to disclose Holly Rao's police statement and grand jury testimony prior to trial.  *See* Dkt. No. 1 at 7.  Rao stated that, prior to the start of trial, she heard Petitioner tell Lloyd Broadnax that he shot the victim in self-defense after the victim threatened him with a knife.  *See id.*  Petitioner objects to the Magistrate Judge's determination that Holly Rao's statement was not *Brady* material, contending that the court's definition of what constitutes *Brady* material was "too narrow" and "inconsistent with precedent."  *See* Dkt. No. 20 at 12-13.

"Under *Brady* and its progeny, 'the Government has a constitutional duty to disclose favorable evidence to the accused where such evidence is 'material' either to guilt or to punishment.'" *United States v. Paulino*, 445 F.3d 211, 224 (2d Cir. 2006) (quoting *United States*

---

[5] *Brady v. Maryland*, 373 U.S. 83 (1963).

*v. Jackson*, 345 F.3d 59, 70 (2d Cir. 2003)).  "To establish a *Brady* violation, a defendant must

show (1) that the evidence at issue is 'favorable to [him], either because it is exculpatory', or

because it is impeaching; (2) the 'evidence must have been suppressed by the State, either

willfully or inadvertently'; and (3) 'prejudice must have ensued.'"  *Id*. (quoting *Strickler v. Greene*,

527 U.S. 263, 281-82, 119 S. Ct. 1936, 144 L. Ed. 2d 286 (1999)).

In assessing whether a *Brady* violation has occurred, "[e]vidence is not 'suppressed' if the

defendant either knew, . . . or should have known, . . . of the essential facts permitting him to take

advantage of any exculpatory evidence."  *United States v. LeRoy*, 687 F.2d 610, 618 (2d Cir.

1982) (internal citations omitted); *see also United States v. Agurs*, 427 U.S. 97, 103 (1976).  The

government is not required to disclose evidence to a defendant "who is 'on notice of the essential

facts which would enable him to call the witness and thus take advantage of any exculpatory

testimony he might furnish.'"  *Id*. (quoting *United States v. Stewart*, 513 F.2d 957, 600 (2d Cir.

1975)).  "The rationale underlying *Brady* is not to supply a defendant with all the evidence in the

Government's possession which might conceivably assist the preparation of his defense, but to

assure that the defendant will not be denied access to exculpatory evidence only known to the

Government."  *Id*. at 619 (citation omitted).

Here, consistent with the Magistrate Judge's determination, as well as the conclusion

reached by the Appellate Division, Petitioner's claim fails because the information at issue is only

marginally exculpatory and was readily available to Petitioner.  As the trial court noted, Petitioner

himself was a party to the conversation, Rao was listed on both parties' witness lists, and the

Prosecution had previously produced a police report in which Lloyd Broadnax described the same

conversation that was the subject of Rao's statement.  *See* Dkt. No. 13-25 at 7-8.  Petitioner's own

knowledge of the information contained in Rao's statements establishes that the information was

24

not "suppressed" for *Brady* purposes.  *See LeRoy*, 687 F.2d at 618.

In further support of the Magistrate Judge's finding that the late disclosure of Rao's statement did not constitute a *Brady* violation is the fact that Rao's statements are only marginally exculpatory and Petitioner has failed to show any prejudice resulting from the late disclosure. The only exculpatory value in the statement is Petitioner's statement that the shooting was done in self-defense, however, the statement is also inculpatory, as it contains Petitioner's confession to shooting Gabriel.  While Petitioner argues that had the information been made available to him earlier, he would have considered a self-defense strategy more carefully, Rao's statements do not set forth any new information that was not available to Petitioner or his defense team at the time they were deciding on their defense strategy.  Accordingly, the Court finds that Petitioner failed to establish that he was in any way prejudiced by the belated disclosure of Rao's statement and grand jury testimony.  As such, Magistrate Judge Hummel correctly determined that the state court's decision was neither contrary to, nor an unreasonable application of *Brady*.

### 3.  Petitioner's Remaining Claims

Petitioner does not object to those parts of Magistrate Judge Hummel's Report and Recommendation in which he recommended denying Petitioner's claims that (1) his *Miranda* rights were violated; (2) his conviction was based on insufficient evidence with regard to the element of intent; and (3) his conviction should be overturned based on newly discovered evidence in the form of Lloyd Broadnax's affadavit.  *See* Dkt. No. 20 at 5-15.  The Court has reviewed Magistrate Judge Hummel's recommendations regarding these claims and finds that he correctly determined them to be without merit.

Specifically, the court found that Petitioner voluntarily waived his *Miranda* rights.  *See*

Dkt. No. 19 at 27-29.  The court found that the detectives adequately informed Petitioner of his rights, and he understood and voluntarily signed the *Miranda* waiver form.  *See id.*  Additionally, there is no evidence in the record of physical abuse or coercion, or that Petitioner was incapacitated during this process.  *See id.*

Additionally, the court correctly found that Petitioner had not met the "heavy burden" required to overturn his conviction based on his claim that the evidence was insufficient to support a conviction for Murder in the Second Degree.  *See id.* at 29-31.  As Magistrate Judge Hummel correctly determined, the circumstantial evidence presented was sufficient for a rational trier of fact, when viewing the evidence in the light most favorable to the prosecution, to find beyond a reasonable doubt that Petitioner intentionally killed the victim.  *See id.* at 31.

Finally, the court properly rejected Petitioner's claim that his conviction should be set aside in light of newly discovered evidence in the form of an affidavit signed by Lloyd Broadnax.  *See id.* at 34-35.  In the affidavit, Lloyd Broadnax recants his statements to police and the grand jury that Petitioner brought the gun to his apartment and placed it in the Cracker Jack box the night of the shooting.  In the affidavit, Lloyd Broadnax now claims that he found the gun the trial court determined to be the murder weapon the night before the shooting and kept it.  *See id.* at 34-35.  Magistrate Judge Hummel correctly rejected this claim, finding that the affidavit alone did not meet the elevated burden of actual innocence required to grant habeas relief.  *See id.*  The court found the affidavit to be incredible, as it was contradicted by Lloyd Broadnax's previous statements to police and the grand jury, as well as by Holly Rao's testimony.  *See id.*  Additionally, the court determined that the evidence could have been produced at trial because Lloyd Broadnax had been interviewed and was available to Petitioner's defense team.  *See id.*

Based on the foregoing, the Court adopts Magistrate Judge Hummel's Report-

Recommendation and Order in its entirety.

**E.     Certificate of Appealability**

The Court notes that 28 U.S.C. § 2253(c)(1) provides, in relevant part, that, "[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from — (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court[.]"[6] 28 U.S.C. § 2553(c)(1).  A court may only issue a Certificate of Appealability "if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).

Since Petitioner has failed to make such a showing with regard to any of his claims, the Court declines to issue a Certificate of Appealability in this matter.  *See Hohn v. United States*, 524 U.S. 236, 239-40 (1998) (quotation omitted).  Further, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and, therefore, *in forma pauperis* status is denied for the purpose of an appeal.  *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

**IV. CONCLUSION**

After carefully considering Magistrate Judge Hummel's Report-Recommendation and Order, Plaintiff's objections thereto, and the applicable law, and for the reasons stated herein, the Court hereby

---

[6] Rule 22 of the Federal Rules of Appellate Procedure also provides that an appeal may not proceed in such actions "unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)."  Fed. R. App. P. 22(b)(1).

**ORDERS** that Magistrate Judge Hummel's Report-Recommendation and Order is **ADOPTED** in its entirety for the reasons stated therein; and the Court further

**ORDERS** that Petitioner's petition for a writ of habeas corpus [Dkt. No. 1] is **DENIED** and **DISMISSED**; and the Court further

**ORDERS** that no Certificate of Appealability shall be issued with respect to any of Petitioner's claims; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Respondent's favor and close the case.

**IT IS SO ORDERED.**

Dated: April 25, 2013
      Albany, New York

Mae A. D'Agostino
U.S. District Judge